*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MAURER, Minors.

UNPUBLISHED
January 20, 2022

No. 357410
Eaton Circuit Court
Family Division
LC No. 19-020241-NA

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court's order terminating her parental rights to the minor children, SM, JMJ, and JM, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (c)(*ii*) (failure to rectify other conditions).[2] We affirm.

## I. BACKGROUND

On August 7, 2019, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court exercise jurisdiction over SM and JMJ. On August 15, 2019, the DHHS filed an amended petition requesting that the trial court remove SM and JMJ from respondent's care on the basis that JMJ tested positive for methamphetamine and amphetamine at birth and that respondent had a history of substance abuse and continued to test positive for

---

[1] During the proceedings, the trial court also terminated the parental rights of the respondent-father. He has not appealed.

[2] The termination petition cited MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). The trial court did not explicitly state the statutory grounds under which it was terminating respondent's parental rights. However, the trial court stated that "the conditions that lead [sic] to adjudication continue to exist" and that "other conditions exist that would cause the children to come into the court's jurisdiction". Therefore, it appears that the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*). The trial court did not read the language from MCL 712A.19b(3)(g) or (j) so it appears that the trial court did not terminate respondent's parental rights under those subsections.

substances. In addition, the petition alleged that respondent was not complying with the safety plan and was minimally complying with services.

On August 16, 2019, the trial court held a preliminary hearing. The CPS investigator testified that respondent used substances while the minor children were in her care, the children had missed medical appointments, and JMJ was struggling to gain weight. Respondent was referred for services with Families Together Building Solutions but only participated in one meeting by the time of the hearing. Based on the testimony from the caseworker, the trial court entered an order removing SM and JMJ from respondent's care. The children were initially placed with a relative, but at the relative's request, they were placed in an unrelated licensed foster home. At the pretrial hearing on August 22, 2019, respondent admitted that she had tested positive for methamphetamine and amphetamine, missed medical appointments for the children, and minimally participated in the CPS investigation.

At the disposition hearing in September 2019, the foster care case manager, Kyra Denton, testified that respondent's barriers to reunification were mental health, housing, and substance abuse. Denton testified that respondent's housing was inappropriate because she lived with her parents and her mother used methamphetamine. Respondent was provided with a list of shelters, was scheduled for a psychological evaluation, completed a substance abuse assessment, and was required to participate in random drug screens.

In November 2019, respondent stopped outpatient substance abuse treatment at Eaton Behavioral Health because it closed. Respondent was referred for services at Community Mental Health (CMH) but never participated in services there. At the March 2020 review hearing, respondent reportedly missed 12 drug screens during the reporting period and the remainder of the screens were positive for amphetamines, methamphetamine, marijuana, and benzodiazepine. Respondent refused to reside in a shelter and refused to participate in any services to address domestic relations or mental health. Respondent expressed interest in inpatient rehabilitation, but did not follow through or participate in outpatient substance abuse services. Domestic relations was added as a barrier to reunification because in January 2020, Denton was present during a domestic violence incident between respondent and respondent-father.

In April 2020, respondent successfully completed outpatient treatment at Sacred Heart for 10 days and then attended outpatient treatment with Resource Counseling, but in June 2020, she was discharged from services for lack of compliance and failure to work with her therapist. At the review and permanency planning hearing in August 2020, Denton reported that respondent refused to complete any drug screens during the reporting period because she was afraid she was going to have a false positive. Respondent was supposed to screen eight times per month. Denton testified that respondent claimed to receive unemployment compensation, but did not provide proof.

In October 2020, respondent gave birth to a third child, JM. The DHHS subsequently filed a petition requesting that JM be removed from respondent's care. Respondent admitted that in her interview with Children's Protective Services (CPS), she reported that approximately two months prior, she had used methamphetamine on two occasions, and that she used THC during her pregnancy. JM was removed from respondent's care and placed with a relative. JM's meconium came back positive for methamphetamine and amphetamine.

At the combined review and permanency planning hearing on November 2, 2020, Denton testified that respondent did not participate in any services during the reporting period as they all were closed due to respondent's nonparticipation. Respondent refused inpatient rehabilitation even though Denton offered to provide transportation. Respondent was still living with her parents. The referee told respondent that she was expected to go to inpatient rehabilitation prior to the next hearing.

From November 20, 2020 through December 17, 2020, respondent attended inpatient substance abuse treatment at the Odyssey House. Respondent contracted COVID-19 at the facility. Respondent did not want to be transferred back to the residential facility after being quarantined in the medical recovery housing unit for 14 days. After leaving the Odyssey House, respondent attended outpatient treatment at Samaritas but was discharged from services for lack of compliance. Respondent participated in only video visits with the children because she reported she continued to have COVID-19 symptoms. Denton reported having difficulty contacting respondent after she left the Odyssey House. Denton testified that she did not have proof that respondent was participating in any services.

In January 2021, the trial court held a combined review and permanency planning hearing. Denton testified and recommended that the goal change from reunification to adoption because appellant failed to demonstrate that she could maintain appropriate housing, participate in substance abuse services, or maintain a substance-free lifestyle. In February 2021, the DHHS filed a petition requesting the termination of respondent's parental rights.

At the termination hearing on May 4, 2021, Denton was the sole witness and respondent was not present. Regarding substance abuse, Denton testified that before drug screens were suspended in March 2020 because of COVID-19, respondent tested positive for substances on numerous occasions and that after screens resumed in May 2020, respondent completed only two screens. Respondent's last screen was in November 2020 prior to entering Odyssey House, and she tested positive for methamphetamine. Respondent did not successfully complete treatment at Odyssey House. Respondent had been offered inpatient rehabilitation, outpatient therapy, random drug screens, and Alcoholics Anonymous/Narcotics Anonymous meetings. Denton testified that respondent was not currently participating in any substance abuse treatment.

As to mental health and emotional stability, Denton testified that she made referrals to respondent for outpatient therapy and for a psychological exam. Respondent attended counseling for mental health at Eaton Behavioral Health before it closed. Respondent was then referred to CMH, Samaritas, and private therapists. Denton testified that she did not believe respondent treated with a private therapist and respondent did not participate in services at CMH. Respondent went to Samaritas after leaving Odyssey House, but she was discharged for lack of compliance. Denton re-referred respondent to Samaritas, but does not believe that respondent reengaged with services.

Denton testified that respondent completed a psychological evaluation in March 2020. It was recommended that respondent complete an inpatient drug rehabilitation program and attend outpatient services upon completion. In April 2020, respondent successfully completed treatment at Sacred Heart for 10 days, then attended outpatient treatment with Resource Counseling, but was discharged from services in June 2020 due to lack of compliance and failure to work with her

therapist. Denton testified that respondent did not participate in individual therapy after Resource Counseling.

With respect to respondent's domestic relations barrier, Denton testified that she referred respondent to shelters specifically for domestic violence. Denton further testified that respondent was in contact with respondent-father throughout the case. Respondent was in contact with respondent-father when JM was born in October 2020, but Denton was not sure if that was respondent's most recent contact with him.

As to respondent's financial situation, Denton testified that in previous reporting periods, respondent reported receiving unemployment, but during the current reporting period, respondent did not provide verification that she was receiving unemployment or that she had any other source of income.

As to housing, Denton testified that at the beginning of the case, respondent lived with her parents, which presented a safety concern because respondent reported that her mother used illicit substances and her father did not pass a background check. Denton referred respondent to the housing voucher program on multiple occasions and to shelters. At one point, respondent reported to be living with her grandmother, but did not provide Denton with an address. At the time of the termination hearing, respondent reported to be living with a friend, but did not allow Denton to complete a home visit.

Denton testified that respondent never moved to unsupervised visits with the children because she continually missed drug screens or tested positive for substances. Her last in-person visit was before she went to Odyssey House in November 2020. Respondent's visits were currently over video due to respondent reporting having symptoms similar to or of COVID-19. Denton did not observe a bond between respondent and JM. Denton testified that JMJ and respondent's bond was "weak" and that it was difficult to tell whether JMJ understood that respondent was his mother. Denton stated that respondent focused the majority of her attention on SM. However, Denton testified that SM's foster parents reported negative behaviors by SM after parenting times. Denton testified that SM and JMJ had a strong bond with their foster family and that the family was willing to adopt. JM also had a strong bond with the relative who was willing to adopt.

The trial court found that respondent did not make "any improvements in the big barrier here of substance abuse." The trial court also stated that respondent "made almost no improvement at all in any of her other issues" including emotional stability, domestic violence, housing, and financial and parenting issues. The trial court also determined that it was in the children's best interests to terminate respondent's parental rights. The trial court entered an order terminating respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

First, respondent argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*). We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a respondent's parental rights if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

In this case, the initial disposition order for SM and JMJ was entered on September 19, 2019, the initial disposition order for JM was entered on November 3, 2020, and respondent's parental rights were terminated on May 4, 2021. Therefore, more than 182 days had elapsed since the initial disposition orders were entered.

The primary condition leading to adjudication was respondent's substance abuse issue. Although respondent participated in inpatient and outpatient substance abuse treatment, she was discharged from many of the services for lack of compliance. Further, respondent did not benefit from treatment because she continued to test positive for substances throughout the case. Denton testified at the termination hearing that respondent was not participating in any substance abuse treatment, and that respondent did not complete any drug screens after she left the Odyssey House in December 2020. Although respondent argues that the pandemic impacted the DHHS's ability to offer services, the record reflects that the DHHS offered ample services to respondent, and that respondent participated in some of those services to address her substance abuse issue. Despite this, respondent failed to demonstrate any meaningful progress toward addressing this issue. Therefore, there was also no reasonable likelihood that respondent would be able to rectify her substance abuse issue within a reasonable time considering the children's ages[3]. Accordingly, we are not left with a definite and firm conviction that a mistake has been made with respect to the trial court's determination that termination was proper under MCL 712A.19b(3)(c)(*i*).[4] See *In re Schadler*, 315 Mich App at 408.

Respondent also argues that the "[DHHS's] efforts were not adequate because [the DHHS] was unable to provide reasonable efforts due to [respondent's] emotional and substance abuse problems" and that "her efforts were undermined by the pandemic disrupting [the] DHHS'[s] ability to provide within the standard amount of time the level of services the family required for reunification." Respondent contends that "reasonable efforts" means more than usual in light of

---

[3] Denton testified at the termination hearing on May 4, 2021, that SM was three years old, JMJ was approximately one and a half years old, and JM was approximately six months old. Denton stated that even if respondent immediately began to fully participate in all services, there would be a minimum of another six months before it would be safe for the children to return to her care.

[4] Because only one statutory ground is required to terminate a respondent's parental rights, we need not address respondent's argument that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*ii*). See *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012).

the pandemic, and that, because this higher burden was not met, it brings into question the adequacy of the evidence relied upon to terminate her rights. See *In re Rood*, 483 Mich 73, 89 (2009) ("The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights."). Respondent concludes that, because the DHHS should have done more to help her reunite with her children, there is not sufficient evidence to conclude "that there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age" as required under MCL 712A.19b(3)(c)(i).

To the extent that respondent is raising an argument about reasonable efforts, she does not raise this issue in the statement of questions presented, so it is not properly presented for appellate review. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001); MCR 7.212(C)(5). Further, respondent cites no caselaw to support her assertion that, in light of the pandemic, " 'reasonable efforts' means something more extensive than what might normally be required to reunite her with her children," nor does respondent give any legal basis on which this Court could reach such a conclusion. Thus, respondent has abandoned the argument. Even if we were to address this issue, the DHHS made the necessary referrals and respondent had the ability to participate in services during the pandemic. However, respondent either did not participate in services or she failed to benefit from the services. Therefore, respondent cannot establish that the DHHS failed to make reasonable efforts to reunify her with the children.

III. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

We review the trial court's determination that termination is in a child's best interests for clear error. *In re Schadler*, 315 Mich App at 408. "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

"Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests." *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014), citing MCL 712A.19b(5). When determining whether termination is in the best interests of the child, the trial court should place its "focus on the child rather than the parent." *Id*. at 411. "[T]he court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

"Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citations omitted). "A trial court's failure to explicitly address whether

-6-

termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id.*

In this case, respondent first argues that she had a bond with the children. However, Denton testified that during visits, respondent spent the majority of her time and attention on SM. Denton testified that SM's foster parents reported negative behaviors by SM after parenting times. Denton was not sure whether JMJ recognized respondent as his mother and characterized the bond between respondent and JMJ as weak. Denton did not observe a bond between respondent and JM as he was removed from respondent's care shortly after he was born. Further, respondent's last in-person visit with the children was before she went to the Odyssey House in November 2020, and Denton testified that it was difficult for JM to develop a bond with respondent over virtual visits. The trial court found that respondent's bond with SM was relatively strong, that respondent had some bond with JMJ, and that respondent had almost no bond with JM. The trial court further found that respondent had not participated in services enough to try to strengthen the bond with her children. In contrast, SM and JMJ had a strong bond with their foster family, and the foster family was willing to adopt them. JM also had a strong bond with the relative he was placed with. The trial court noted that the two placements for the children agreed to make sure that the children knew each other and could interact with each other. Ultimately, the trial court found that the advantages of reunification and termination were tied as far as bonding was concerned. Based on the evidence on the record, the trial court did not clearly err in finding that the bond factor was relatively neutral.

A child's bond to a parent is only one factor the trial court may consider when determining whether termination of a respondent's parental rights is in the child's best interests. The trial court addressed numerous other factors that supported the termination of respondent's parental rights. The trial court stated:

> As far [as respondent's] parenting ability, again, with all three children, again, she's not shown any disposition for love, affection, or emotional ties. She's not shown any capacity to provide food, clothing, medical care because of her moral fitness, because of her strong drug use, her history of domestic violence, and her failing to comply with the Case Service Plan. She has shown very clearly as to all three children that she does not have the sufficient parenting ability to be reunited with her children, and she has not shown that that's going to change in the relatively foreseeable future based on her history. These children, of course, still have need for stability, finality. . . . These children have lived now in a stable home; two in licensed unrelated foster care, one in unlicensed relative placement. They are in loving environments. Those placements are in a position that they wish to adopt. Again, [respondent] is not complying with services; she's not getting herself sober; she's not addressing her housing issues, or her parenting issues. These children need that permanency, stability, and finality. And again, for all three of these children, I find that that [sic] factor would favor termination on behalf of [respondent].
>
> And the advantages of a foster home over the parent's home, again, we have the youngest child in a relative placement, and that would favor reunification, but again, because this child has not been with [respondent], except for a few parenting

-7-

times while this case has been open, um, that factor, I think, is—is neutral . . . with this child. As far as the other two children, they certainly have advantages of being in [a] foster home, which would favor termination.

The trial court's findings as to respondent's lack of capacity to provide, lack of parenting ability, lack of compliance with her case service plan, and history of domestic violence were all supported by the evidence in the record. Denton testified at the termination hearing that respondent previously reported receiving unemployment, but during the current reporting period did not provide verification. Therefore, respondent did not demonstrate that she had a source of income. In addition, respondent did not allow Denton to complete a home visit to determine whether the friend's house respondent reported to be living in was appropriate. Further, as previously stated, respondent continually missed drug screens or tested positive for substances throughout the case. Respondent last completed a drug screen in November 2020, and she tested positive for methamphetamine. At the time of the termination hearing, she was not participating in any substance abuse treatment or individual therapy for her emotional stability issues. Respondent never received unsupervised visits because of her continued drug use. Finally, Denton witnessed a domestic violence incident between respondent and respondent-father in January 2020. Denton testified that respondent was in contact with respondent-father throughout the case, including when JM was born in October 2020. Therefore, because the record supports the trial court's conclusions as to respondent's lack of capacity to provide, lack of parenting ability, lack of compliance with her case service plan, and history of domestic violence, the trial court did not clearly err in determining that it was in the best interests of the children to terminate respondent's parental rights.

Finally, respondent argues that it was not necessary to terminate her parental rights to JM because JM was placed with a relative. We disagree. The trial court acknowledged that JM's placement with a relative would favor reunification, but went on to properly balance JM's need for permanency, stability, and finality with the fact that he was placed with a relative. See *In re Olive/Metts Minors*, 297 Mich App at 42-43. The trial court noted that JM was removed from respondent's care shortly after birth and respondent only had a few parenting times with JM during the case. Denton did not observe any bond between respondent and JM, whereas the relative he was placed with had a strong bond with JM and was willing to adopt him. The trial court found that the relative placement was able to offer the permanency, stability, and finality that JM needed. In contrast, respondent failed to make any meaningful improvement with respect to the barriers to reunification. Thus, we discern no clear error in the trial court's findings or determination that termination of respondent's parental rights was in JM's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica